**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JACQULINE CRUTCHER-MACK, | CASE NO. 1:22-CV-00622-CEH |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE<br>CARMEN E. HENDERSON |
| COMMISIONER OF SOCIAL SECURITY ADMINISTRATION, | **MEMORANDUM ORDER & OPINION** |
| Defendant, | |

### I.   Introduction

Plaintiff, Jacqueline Crutcher-Mack ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI"), Period of Disability ("POD"), Disability Insurance Benefits ("DIB"). This matter is before the Court by consent of the parties under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (ECF No. 8). For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's nondisability finding.

### II.   Procedural History

Claimant filed applications for SSI, POD, and DIB on March 11, 2020, alleging a disability onset date of March 4, 2020.[1] (ECF No. 10, Tr. 283). The applications were denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge

---

[1] Claimant also filed an application for disability on March 21, 2017, and an ALJ ultimately found Claimant not disabled. (ECF No. 10, Tr. 283). The findings from this decision were reconsidered in this case in accordance with *Drummond v. Commissioner of Social Security*. 126 F.3d 837 (6th Cir. 1997).

1

("ALJ"). (ECF No. 10, Tr. 283). On March 9, 2021, an ALJ held a telephonic hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 10, Tr. 283). The ALJ issued a written decision finding Claimant was not disabled on March 24, 2021. (ECF No. 10, Tr. 280). The ALJ's decision became final on March 29, 2022 when the Appeals Council declined further review. (ECF No. 10, Tr. 1).

Claimant filed her complaint in the U.S. District Court for the Northern District of Ohio to challenge the Commissioner's final decision on April 19, 2022. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 14, 15). Claimant asserts the following assignment of error:

> (1) Whether the ALJ erred in his consideration of the persuasiveness of Nurse Practitioner Gilbert's opinion.

(ECF No. 14 at 1).

### III. Background

#### A. Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms:

> Darshan Mahajan, M.D., evaluated the claimant on November 15, 2019 (Exhibit B1F). The claimant was seen for follow-up for neck and low back pain, SVCVD, anxiety, depression, panic disorder, dizziness, falls, and Arnold Chiari malformation. Neurological examination noted she was awake, alert and well-oriented. Speech comprehension and expression are intact. Her vision is clear with no diplopia. There was no facial weakness. Swallowing is normal. Strength is well-maintained. She had good balance and she ambulated well. She was assessed with cervicalgia, carpal tunnel syndrome, bilateral upper limbs, hereditary motor and sensory neuropathy, family history of diabetes mellitus, labyrinthine dysfunction, bilateral, other cerebrovascular disease and low back pain.
>
> Dr. Mahajan had a Telemedicine visit with the claimant on April 15, 2020 (Exhibit B5F, p. 8). The claimant reported an increase in her medication for depression and it was helping. She reported she has

neck and back pain. She stated that the low back pain hurts so she has to lay down and it feels like someone is beating her with a hammer. She reported she has been having aches and pains in the neck and the back. She takes two Tylenol tablets three times a day. Her dizziness and imbalance fluctuates in severity. She has abnormalities in gait and mobility. Examination noted she was awake, alert and well oriented. Speech comprehension and expression are intact. She answers questions appropriately. She follows commands. Her speech was clear and there was no dysarthria. The eye movement are full and there is no nystagmus appreciated. Gross movements for swallowing and tongue are intact on observation. Power proximal and distal in all extremities is intact bilaterally. There were no involuntary movements. Gait is stable. She was assessed with cervicalgia, dizziness and giddiness, other abnormalities of gait and mobility, other cerebrovascular disease, carpal tunnel syndrome, bilateral upper limbs, hereditary motor and sensory neuropathy and low back pain.

Basavarajappa Viswanath, M.D., evaluated the claimant on April 16, 2020 for her back pain (Exhibit B3F). Examination noted the neck was supple with no mass. Thyroid was not enlarged and there were no palpable thyroid nodules. She had a regular heart rate and rhythm with no gallops, murmurs or rub. There was no peripheral edema. Breath sounds were clear. Gait evaluation demonstrated a normal gait. There was no joint swelling. She had normal movements of all extremities. Muscle strength and tone were normal. She was alert and oriented x3. Her mood and affect were normal. There was no cervical lymphadenopathy. She was diagnosed with weight loss, fibromyalgia, depression, cervical pain, osteoarthritis, skeletal dysplasia and dysphagia, idiopathic.

Dr. Mahajan evaluated the claimant on August 12, 2020 (Exhibit B6F, p. 6). The claimant reported that she was having on and off pain in the back and neck. Cyclobenzaprine helps and she can take two Tylenol three times a day if needed. She reported she was having more swelling feelings in the left hand. Examination noted she was awake, alert and well-oriented. Her speech was clear and her comprehension and expressions were intact. Vision is clear with no diplopia. There was no facial weakness. Swallowing is normal for solids and liquids. Strength is well-maintained. Balance is good and she was ambulating well. She developed recurrent changes of carpal tunnel syndrome. She was assessed with low back pain, cervicalgia, hereditary motor and sensory neuropathy, carpal tunnel syndrome, bilateral upper limbs, other cerebrovascular disease, other abnormalities of gait and mobility and dizziness and giddiness.

Dr. Viswanath evaluated the claimant on August 17, 2020 (Exhibit B8F, p. 6). Examination noted the claimant appeared healthy and overweight. The neck was supple with no mass. Thyroid was not enlarged and there were no palpable thyroid nodules. She had a regular heart rate and rhythm with no gallops, murmurs or rubs. There was no peripheral edema. Breath sounds were clear. Abdomen noted right upper quadrant tenderness with no organomegaly or hernias. Her gait and station were normal. Cortical function and coordination were normal. She was alert and oriented x3. Her mood and affect were normal. There was no cervical lymphadenopathy. She was diagnosed with depression, fibromyalgia, skeletal dysplasia, osteoarthritis and abdominal cramping.

Ultrasound of the abdomen on August 20, 2020 showed suspected intrahepatic choledochal cysts similar to previous MRI imaging again with no suspected extrahepatic involvement, this would correspond with type V congenital choledochal cysts (Exhibit B14F, p. 5).

Electromyogram on August 24, 2020 showed changes of mild bilateral median nerve compression neuropathy of the wrists consistent with diagnosis of mild bilateral carpal tunnel syndrome (Exhibit B6F, p. 9). There is only mild worsening since the previous study of May 2018. The claimant shall be continued on conservative management.

Dr. Mahajan evaluated the claimant on October 14, 2020 (Exhibit B11F). The claimant reported she has a hard time focusing and remembering things. She feels that she cannot use the hands as much. She is having numbness. On December 30, 2020, the claimant reported that she has neck and low back pain and standing and walking for a long time brings it up. It is hard for her to sit and she has to lay back. Her anxiety comes and goes. She stated that she is doing reasonably well. Examination noted she was awake, alert and well oriented. Power proximal and distal in all extremities is intact. There were no involuntary movements. She stands with arms over chest. Her gait is table. She is able to walk on toes and heels without a problem. Tandem walking and Romberg position could not be tested due to fall risk with the telemedicine modality. She was assessed with hereditary motor and sensory neuropathy, low back pain, cervicalgia, carpal tunnel syndrome, bilateral upper limbs, other cerebrovascular disease, other abnormalities of gait and mobility, and dizziness and giddiness.

The claimant participated in occupational therapy for treatment of

her bilateral carpal tunnel syndrome (Exhibit B15F). The claimant reports tingling in median nerve distribution fingers. She demonstrates right thenar atrophy. She is to obtain night wrist splints. She was observed to move and grasp items slower than expected when working with registration papers.

Mental status examination on November 20, 2019 noted the claimant's appearance was fair and her gait was normal (Exhibit B2F). She was oriented to date/time, place and person. She was alert. Her manner was appropriate. Motor activity was normal. Her speech and language were normal. Her mood was depressed and anxious. Thought process and perception were normal. Cognition and short-term memory were intact. She freaks out when around crowds. She feels easily overwhelmed.

Records from Theophilus Arthur-Mensah, M.D., noted on December 18, 2019 that the claimant had increased social anxiety, social withdrawal and decreased confidence (Exhibit B4F). On January 22, 2020, she reported she was doing okay but offered minimal elaboration. She wants to isolate all the time. She gets anxious and panicky when around others. The claimant reported on March 3, 2020 that she was struggling mostly with depression and anxiety. On March 19, 2020, the claimant reported that she was "doing pretty good with the Rexulti at 2mg". She feels her medications are working overall. She reported she was resting better and she denied any concerns or complaints at this time. The claimant reported on April 22, 2020 that she was doing pretty good. She was practicing social distancing. On May 28, 2020, the claimant stated she was "hanging in there" and she was doing OK. Mental status examination noted she was oriented x3. She was alert and cooperative. Her speech and language were normal. Her mood was depressed. Thought process and associations were normal. She endorsed ruminations. Her perception was normal. Cognition was fair and short-term memory was intact. She was diagnosed with major depressive disorder, recurrent.

Additional records from Dr. Mensah reflect on July 23, 2020 that the claimant was doing OK (Exhibit B7F). She has good and bad days. She isolates herself on the bad days. The claimant reported on August 18, 2020 that she has been defecating on herself at night while sleeping from time to time over the past 2 months. She reported she was in severe pain. Mental status examination remains unchanged from May 28, 2020 except her mood as depressed and anxious.

Records from Nord Counseling Services on September 1, 2020

reflects the claimant expressed experiencing symptoms such as depression, lack of self-worth and anxiety (Exhibit B9F). She is experiencing symptoms of depression causing clinically significant distress. She reports experiencing depressed mood for most the day nearly every day, difficulty with concentration, disturbances in sleep, loss of interest, fatigue, feelings of worthlessness and fleeting suicidal ideation. She reported that she has been feeling this way since her mother passed away in 2006. She also reports worry, restlessness, excessive fear, social anxiety, and separation anxiety occurring several times a week. She reported some symptoms of paranoia and possible auditory hallucinations. The claimant reported on September 14, 2020 that she has a fear of falling. She is nervous and she cannot sleep. She sometimes has difficulty eating and she has racing thoughts. She has thoughts of impending doom. She has thoughts of hopelessness, helplessness and worthlessness. She does not like loud sounds. Mental status examination noted her mood/affect was depressed. She was pleasant and cooperative. Thought process was logical, intact and easy to follow. She was oriented x3. She denied suicidal or homicidal ideations.

Additional records from Nord Counseling Services noted on October 8, 2020 that the claimant describes history of recurrent episodes of severely low mood symptoms (Exhibit B10F). She has low motivation, low energy, forgetfulness, self-isolation, anhedonia, tearfulness, feelings of guilt, worthlessness, hopelessness, increased anxiety, and agitation. She has suicidal ideations with thoughts of questioning the purpose of life or wishing she was not born. She denied suicidal intent or plan of self-harm. Her mood remains depressed despite current medication regimen. She reports symptoms of psychosis with auditory hallucinations. She reports paranoid thoughts of being followed. She describes increased anxiety in public settings. She reports constant worrisome thoughts. She is pleasant, receptive and cooperative. She is mildly slow to processing of information. The claimant reported on November 5, 2020 that she was still struggling with anxiety, worry, nervousness and paranoid thoughts about the pandemic. She reports medication compliance. Her mood remains depressed. She reports sleeping well throughout the night and her appetite remains stable. On December 10, 2020, the claimant reported her mood has been improving. She denied thoughts of harm to self or others. She has some anxiety, but not overwhelming. She has some agitation. She reports visual hallucinations of shadows last week. She has ongoing paranoid thoughts of being watched and harmed in increased in public setting. She was sleeping well throughout the night and her appetite is stable. The claimant reported on January 26, 2021 that her symptoms of psychosis have decreased significantly and no longer occurring

6

> during the day. Her mood has improved. She denied suicidal or homicidal ideations. Telemedicine mental status examination noted her thought process was logical. She was alert. She had some paranoid thoughts. Associations were intact. She was oriented x3. Her mood/affect were euthymic, anxious and neutral. Her memory, insight, judgment and fund of knowledge were fair.

(ECF No. 10, Tr. 292–95).

### B. Opinion Evidence at Issue

One expert opinion is at issue in this case. Ms. Kimberly Gilbert, Certified Nurse Practitioner, completed a Medical Source Statement regarding Claimant's psychological health on January 27, 2021. (ECF No. 10, Tr. 774). The ALJ summarized the opinion in his decision:

> She reported that the claimant was diagnosed with schizoaffective disorder, depressive type, with auditory hallucinations, paranoid and delusional thoughts, and a severely depressed mood. She endorsed low energy, low motivation, lack of interests, self-isolation, and feelings of worthlessness and hopelessness. The claimant was diagnosed with generalized anxiety disorder with chronic worrisome thoughts and behaviors. Side effects from medication include fatigue, daytime somnolence, restlessness and possible weight gain. The claimant suffers with ongoing symptoms of psychosis of auditory hallucinations, delusional and paranoid thoughts, as well as mood instability symptoms. She has depression, lack of motivation, low energy, feelings of guilt, worthlessness, and hopelessness, self-isolation, tearfulness, anhedonia, poor focus/concentration, poor memory, chronic anxiety, nervousness, uncontrollable worrisome thoughts, with associated ritualist, checking behavior, and heightened anxiety in public settings. Ms. Gilbert opined that the claimant would require 5 additional breaks from work activity. She would be off-task 20% or more of the workday. She would be able to engage in appropriate deferential interactions with a supervisor, or engage in socially appropriate interactions with co-workers, <55% of the time. She would be absent, late, or have to leave early due to her mental health 4 or more days a month.

(ECF No. 10, Tr. 295–96).

### IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

7

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since March 4, 2020, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: degenerative disc disease of cervical spine with scoliosis, impingement syndrome of left shoulder, skeletal dysplasia (dwarfism), fibromyalgia, depressive disorder with alleged schizoaffective features, anxiety disorder with history of panic, carpal tunnel, Arnold Chiari malformation, and vertigo (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity (20 CFR 404.1545 and 416.945) to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except: She can never climbing of ladders, ropes or scaffolds; can frequently balance; can occasionally climb ramps and stairs; can occasionally stoop, kneel, crouch and crawl; She can occasionally perform overhead reaching of the left arm without limitation of lateral reaching. She can frequently handle without limitation of fingering; she must avoid exposure to hazards (heights, machinery, commercial driving); and mentally, she can perform routine tasks in a low stress environment (no fast pace, strict quotas or frequent duty changes) involving superficial interpersonal interactions with coworkers, supervisors and public (no arbitration, negotiation or confrontation) (20 CFR 404.1569a and 416.969a).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 8, 1970 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age upon her attainment of age 50 on December 7, 2020 (20 CFR 404.1563 and 416.963).

> 8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from March 4, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(ECF No. 10, Tr. 286, 287, 290, 297–98, 299)

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (en banc)). If the Commissioner's decision is supported by substantial evidence, it must be

9

affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to SSI or DIB: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.*

### C. Discussion

Claimant raises one issue on appeal. She argues the ALJ erred in rejecting Ms. Gilbert's opinion since it is "highly persuasive, with support in objective findings of record, consistent with [the] evidence as a whole, and based on the specialized treatment relationship with Plaintiff." (ECF No. 14 at 11). Claimant argues that the ALJ failed to incorporate relevant evidence in his "perfunctory" analysis of the opinion and "cherry picked" the record. (ECF No. 14 at 14–15). She also claims the ALJ tried to "minimize" Ms. Gilbert's credentials since she is not a physician.

10

(ECF No. 14 at 14). Finally, Claimant contends the ALJ overstepped his role by specifically rejecting her allegations of hallucinations and delusions and improperly "provide[d a] medical opinion." (ECF No. 14 at 16).

The Commissioner responds that the ALJ met the requirements of § 404.1520c by addressing the supportability and consistency factors in his analysis of the opinion. (ECF No. 15 at 9). Moreover, the Commissioner points out that the ALJ "provided ample support for his conclusion" and "thoroughly discussed such evidence elsewhere in the decision." (ECF No. 15 at 12). To the extent Claimant argues Ms. Gilbert should have been given greater deference because of her specialty or treating relationships, the Commissioner argues that supportability and consistency are the most important factor ALJs must consider. (ECF No. 15 at 13). The Commissioner finally argues the ALJ did not cherry pick the record or play doctor since it is his duty to reach a conclusion on the evidence and he referenced numerous counterpoints throughout his decision. (ECF No. 15 at 14–15).

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical evidence.[2] § 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017).

The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." § 404.1520c(a). Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating

---

[2] The "treating source rule," which generally required the ALJ to defer to the opinions of treating physicians, was abrogated by § 404.1520c for claims filed on or after March 27, 2017, such as here.

11

a claim. § 404.1520c(a). In doing so, the ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." §§ 404.1520c(c), 404. 1520c(b)(2) ("The factors of supportability [] and consistency [] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . .").

Here, the ALJ first summarized Ms. Gilbert's opinion:

> She reported that the claimant was diagnosed with schizoaffective disorder, depressive type, with auditory hallucinations, paranoid and delusional thoughts, and a severely depressed mood. She endorsed low energy, low motivation, lack of interests, self-isolation, and feelings of worthlessness and hopelessness. The claimant was diagnosed with generalized anxiety disorder with chronic worrisome thoughts and behaviors. Side effects from medication include fatigue, daytime somnolence, restlessness and possible weight gain. The claimant suffers with ongoing symptoms of psychosis of auditory hallucinations, delusional and paranoid thoughts, as well as mood instability symptoms. She has depression, lack of motivation, low energy, feelings of guilt, worthlessness, and hopelessness, self-isolation, tearfulness, anhedonia, poor focus/concentration, poor memory, chronic anxiety, nervousness, uncontrollable worrisome thoughts, with associated ritualist, checking behavior, and heightened anxiety in public settings. Ms. Gilbert opined that the claimant would require 5 additional breaks from work activity. She would be off-task 20% or more of the workday. She would be able to engage in appropriate deferential interactions with a supervisor, or engage in socially appropriate interactions with co-workers, <55% of the time. She would be absent, late, or have to leave early due to her mental health 4 or more days a month.

(ECF No. 10, Tr. 295–96). Then he explained why he found the opinion unpersuasive:

> The undersigned finds this opinion to be unpersuasive because it is not supported by the actual findings that were obtained at the Nord

12

> Center (Exhibits B9F-B10F). Accordingly, the undersigned specifically rejects the opinions of Ms. Gilbert and the claimant's allegations of hallucinations, delusions or other indications of psychosis, as they are not supported by or consistent with the objective medical and clinical findings of record (20 CFR 404.1520c and 416.920c).

(ECF No. 10, Tr. 296).

In rejecting the opinion, the ALJ addressed the opinion's supportability and consistency with the record. He noted that the opinion was not supported by other records from the Nord Center, citing Exhibits B9F and B10F. (ECF No. 10, Tr. 296). Then he specifically noted that Ms. Gilbert's opinion and Claimant's alleged hallucinations, delusions, and "other indications of psychosis" were unsupported and inconsistent with objective medical findings and the record as a whole. (ECF No. 10, Tr. 296). The Court notes that Ms. Gilbert referenced Claimant's alleged hallucinations and delusions to justify, in part, her recommendations. (*See* ECF No. 10, Tr. 774).

Exhibit B9F supports the ALJ's rejection of Ms. Gilbert's recommended limitations. Despite various subjective allegations of depression, anxiety, and low self-worth, the provider noted that Claimant "appears alert and oriented . . . . [Claimant] was cooperative and talkative throughout the session . . . . [and] denies current suicidal ideation, thought, and plans." (ECF No. 10, Tr. 714–15, 716). The provider also found Claimant to have logical thought processes, full affect, fair insight and judgment, and moderate depression. (ECF No. 10, Tr. 716). The ALJ noted these records in his RFC analysis. (*See* ECF No. 10, Tr. 294).

Exhibit B10F also supports the ALJ's credibility finding. The record reports logical thought processes, clear speech, intact associations, fair memory, and fair fund of knowledge. (ECF No. 10, Tr. 731–32). Despite noting diagnoses of schizoaffective disorder, generalized anxiety disorder, and obsessive-compulsive disorder, Ms. Gilbert reported in December 2020 that Claimant's mood was improving and that her anxiety was "not overwhelming." (ECF No. 10, Tr.

13

734). She also noted Claimant was "pleasant, cooperate, [and] receptive." By January 26, 2021—one day before Ms. Gilbert authored her opinion—she reported that Claimant's signs and symptoms of psychosis had "decreased significantly and no longer occur[] during the day." (ECF No. 10, Tr. 737). She also noted that Claimant's mood improved since the December 2020 appointment. (ECF No. 10, Tr. 737). Upon examination, Claimant presented with logical thought processes, clear speech, alert attention and concentration, intact associations, euthymic mood and affect, fair memory, and fair insight and judgment. (ECF No. 10, Tr. 738). The ALJ noted these records in his RFC analysis.

Throughout his RFC analysis, the ALJ noted reports that supported and countered Ms. Gilbert's opinion. For instance, while he noted the positive mental health examinations and improvement discussed above, he also referenced Claimant's subjective allegations of hallucinations, paranoid thoughts, and suicidal ideation, among other psychosis symptoms. (*See* ECF No. 10, Tr. 294, 295). Thus, the ALJ did not cherry pick the record for evidence that exclusively supported his credibility finding.

Likewise, the ALJ did not "overstep[] his position" by "rejecting [Claimant's] reports of auditory hallucinations and delusions," as Claimant argues. (*See* ECF No. 14 at 16). The ALJ simply found that the subjective reports—which Ms. Gilmore referenced to justify her limitations—were unsupported and inconsistent with the record. (*See* ECF No. 10, Tr. 296 (ALJ's decision), 774 (expert opinion)). Under § 416.920c, he is entitled to make this finding when evaluating medical opinions. Thus, he did not "provide [a] medical opinion," as Claimant argues, but instead, discredited Ms. Gilmore's rationale for her recommendations.

To the extent that Claimant is attempting to argue that the ALJ improperly discredited her subjective complaints of hallucinations and delusions, she failed to cite any authority in support of

14

her request or further develop the argument. (*See* ECF No. 10, Tr. 296 (ALJ's statement); ECF No. 14 at 16 (argument)). Accordingly, this issue is waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *see also Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 454 (6th Cir. 2006) (in a Social Security appeal, noting that a claimant's observations with respect to the ALJ's findings "without elaboration or legal argument, failing even to hint at their legal significance or virtue," are generally waived). Similarly, Claimant's references to various records within Ms. Gilbert's opinion and elsewhere are unavailing. (*See* ECF No. 14 at 13–15). Her argument merely highlights that there may be substantial evidence to support an alternative conclusion, but this is not enough to disturb the ALJ's finding. As long as substantial evidence supports the Commissioner's decision, the Court must defer to it, "even if there is substantial evidence in the record that would have supported an opposite conclusion[.]" *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.") (citations omitted).

The Court finally rejects Claimant's suggestion that the ALJ discredited Ms. Gilbert's opinion because she is not a physician. (*See* ECF No. 14 at 14). Claimant fails to reference any finding or statement in the decision indicating that the ALJ discredited the opinion based on Ms. Gilbert's credentials. Indeed, the ALJ simply noted that the opinion was unsupported by the record and inconsistent with the evidence. Moreover, Ms. Gilbert's treating relationship does not undermine ALJ's credibility finding since supportability and consistency are the most important

15

factors for review. *See* § 404. 1520c(b)(2).[3] Here, the ALJ found that these factors weighed in favor of finding the opinion unpersuasive, and substantial evidence supports this finding

Based on these records, the Court finds that substantial evidence supports the ALJ's finding regarding Ms. Gilbert's opinion. The Court will not disturb the decision.

### VI. Conclusion

Based on the foregoing, it the Court AFFIRMS the Commissioner of Social Security's nondisability finding.

Dated: April 6, 2022

*s/ Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

[3] The Court also notes that the cases Claimant cites in support of this argument were written before the end of the treating source rule. (ECF No. 14 at 14 (citing *Montanez v. Comm'r of Soc. Sec.*, No. 1:13 CV 614, 2013 LEXIS 181664 (N.D. Ohio Dec. 17, 2013), *report and recommendation adopted*, 2013 LEXIS 181663 (N.D. Ohio Dec. 30, 2013); *Abram v. Comm'r of Soc. Sec.*, No. 1:15 CV 34, 2016 WL 775337, at *5 n.68 (N.D. Ohio Feb. 29, 2016)). Thus, their findings about the treating relationship factor do not apply to this case as Claimant filed her applications after March 27, 2017.